UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DEBORAH D. MOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:10-CV-182 |
| v. | ) | |
| | ) | *Collier / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Deborah D. Moss ("Plaintiff") was denied disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Defendant"), and she now appeals that denial.[1] Plaintiff contends the Administrative Law Judge ("ALJ") who heard her claim erred by rejecting the opinion of her treating neurologist in favor of a non-examining medical expert's opinion. Plaintiff has moved for judgment on the pleadings [Doc. 11], and Defendant has moved for summary judgment [Doc. 15]. For the reasons stated below, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 11] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 15] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED WITH PREJUDICE**.

**I.   ADMINISTRATIVE PROCEEDINGS**

In March 2006, at the age of 43, Plaintiff applied for SSI and DIB, alleging disability due

---

[1] This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), which, respectively, provide for judicial review of the final decisions of the Commissioner denying DIB and SSI benefits.

to arthritis (back pain), pinched nerves, and carpal tunnel syndrome since March 3, 2006 (Tr. 114, 178-86, 211). She applied in person, and the interviewer noted that she had no difficulty standing, walking, or using her hands, but she did appear to have trouble sitting and had to stand several times during the interview (Tr. 190). Plaintiff's claim was denied initially and on reconsideration (Tr. 114, 118). Plaintiff requested a hearing (Tr. 123), which was held on May 22, 2008 (Tr. 69), and a supplemental hearing was held on July 29, 2008, to take testimony from a medical expert (Tr. 26). By decision dated September 29, 2008, the ALJ determined Plaintiff was not disabled (Tr. 15-23). On May 8, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1).

## II.     DISABILITY DETERMINATION PROCESS

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden of

proof at the first four steps to show the extent of her impairments, but the burden shifts to the Commissioner at step five to show there are jobs the claimant can perform despite her impairments. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). In order to make the required findings at steps four and five, the ALJ must assess the claimant's residual functional capacity ("RFC"), which refers to the maximum level of work the claimant can perform on a "regular and continuing basis"—i.e., for 8 hours per day, five days per week. Social Security Ruling ("SSR") 96-8p.

## III. FACTUAL BACKGROUND AND ALJ'S FINDINGS

In this appeal, Plaintiff challenges the ALJ's assessment of her RFC, arguing the ALJ should not have discounted the opinion of Sam A. Kabbani, M.D., her treating neurologist. This summary of the facts, accordingly, will focus on the complaints for which Dr. Kabbani treated Plaintiff.

### A. Plaintiff's Allegations of Disability

Plaintiff has worked as an automotive inspector, battery inspector, machine operator, and laborer (Tr. 192). She was working as a cook, making sandwiches, when she stated she could no longer perform her job duties (Tr. 192). Plaintiff testified that her treating neurologist, Dr. Kabbani,[2] advised her to quit work and file for disability on March 3, 2006, and she claims that date for the onset of her disability (77, 99). Before stopping work, she had reduced her hours (Tr. 211). She alleged that she had begun to experience neck pain about five years prior, and that it had moved to her back, knees, and fingers (Tr. 200). Plaintiff described radiating back pain and difficulty grasping things (Tr. 83, 201). At the hearing, Plaintiff testified that headaches were her most important problem (Tr. 80). The headaches originated in her neck, and she believed they were caused by her

---

[2] In the hearing transcript, Dr. Kabbani's name is spelled "Caboni."

3

neck pain (Tr. 80, 83). Plaintiff's pain affected her ability "to do everyday activities" like drying her hair, lifting her arms, walking the dog, and household chores (Tr. 87-88, 222). A friend and Plaintiff's 11-year-old daughter helped with the household chores (Tr. 79-80). Plaintiff's medications relieved her neck pain, though not her back and knee pain (Tr. 200). She reported a lack of energy, but no other side effects from her medications (Tr. 200, 222).

### B. Medical Evidence

Plaintiff first complained to her primary care physician, Yung G. Lee, M.D., in May 2005 (Tr. 376). She described neck pain that had bothered her "on and off" for a year (Tr. 376). Dr. Lee's assessment was cervical radiculopathy, and he prescribed pain medication and referred Plaintiff for an MRI (Tr. 376). On June 2, 2005, Plaintiff reported that the pain medicine was "not helping," and she received an MRI of her cervical spine due to a "history" of neck pain with left-arm radiculopathy (Tr. 275, 306). Plaintiff reported "chronic" symptoms of neck pain and referred pain in her left arm, accompanied by headaches and nausea, since December 2004 (Tr. 262). The MRI revealed a "small degenerative spur" at the C5-6 level and "marked straightening" of the cervical alignment, but no disk protrusion, extrusion, or stenosis (Tr. 275, 306). Stephen Lemings, M.D., opined that a neurosurgical consultation might be appropriate for Plaintiff's "[p]ersistent radiculopathy" (Tr. 275). About a week later, Plaintiff was examined by Elmer Pinzon, M.D., who noted Plaintiff's left arm had full range of motion and no pain or tenderness on palpation (Tr. 264). Examining Plaintiff's cervical spine, Dr. Pinzon noted she had mild pain with "left lateral rotation extension," but she could forward flex and extend without significant difficulty (Tr. 264). Plaintiff was also tender to palpation at the C5-6 and C6-7 levels (Tr. 264). Cervical spine x-rays showed "very mild degenerative disk loss" at C5-6 and C6-7, with "mild, early facet changes" at both levels"

4

(Tr. 264). Dr. Pinzon recorded his impression that Plaintiff's left arm pain was "possibly suggestive of early radiculopathy," but was "possibly more of a somatic referral pattern" (Tr. 265). Dr. Pinzon recommended ibuprofen and Skelaxin along with physical therapy, reserving "facet joint injections" if her problems persisted (Tr. 265). He also recommended an EMG nerve test (Tr. 265).

Also in June 2005, Dr. Lee referred Plaintiff to Dr. Kabbani, a neurologist, for headaches. At her first appointment with Dr. Kabbani, Plaintiff complained of neck pain which radiated to both arms (Tr. 418). She also described numbness and tingling in her hands (Tr. 418). Dr. Kabbani, in his initial examination of Plaintiff, detected no focal motor weakness or sensory loss (Tr. 418). After administering an electromyographic exam and a nerve conduction velocity study, Dr. Kabbani's impression was neuropathy, ruling out plexopathy and radiculopathy, and degenerative disc and joint disease (Tr. 418, 420-24). He recommended a wrist brace and prescribed Celebrex and Trileptal (Tr. 418-19). Plaintiff did not return to Dr. Kabbani until January 2006, at which time he adjusted her medications, but there were "no changes" in Plaintiff's physical examination (Tr. 417).

In June 2006, Plaintiff was treated for chest pain, and at that time she reported symptoms of headache, numbness in her right leg, back pain, diffuse arthralgias, and aching pain in her legs at night (Tr. 303). Plaintiff returned to see Dr. Kabbani again in July 2006, and she complained of "more pain[,] . . . jerking at night, [and] poor sleep" (Tr. 416). Dr. Kabbani wrote that Plaintiff "has restless leg syndrome" and prescribed Requip, but he did not indicate that he performed any tests for that condition (Tr. 416). He did, however, schedule Plaintiff for a lumbar spine x-ray, which revealed "mild dextroscoliosis" and "some degenerative spurring and some degenerative facet arthritis" (Tr. 415-16).

Plaintiff began pain management treatment in December 2006 (Tr. 413-14). At that time, Plaintiff described pain that radiated to her arms, through her buttocks, and to her knees (Tr. 413). By her report, the pain was present at all times and did not increase with activity, and Celebrex "helped quite a bit" (Tr. 413). On physical examination, "[s]ensation to pinprick [wa]s decreased" in the right arm and left leg, and to a lesser extent, the right leg (Tr. 413). Plaintiff's motor strength, however, was normal, and her reflexes were "brisk and equal" (Tr. 413). Both the straight-leg raising test and Spurling's test were negative (Tr. 413). Finally, range of motion in the cervical spine was within normal limits and was painless, and there was no muscle tenderness or spasm of the spine itself (Tr. 413-14). Plaintiff did not return to see Dr. Kabbani until January 2007, at which time there was "no change" to the earlier physical examination findings (Tr. 402). She received an epidural steroid block in the cervical spine on the same day (Tr. 404-04). The epidural "seemed to help," so she received another block in February 2007 from James Wilke, Jr., M.D., and she expressed interest in a similar procedure for her lumbar spine, depending on the results of a scheduled MRI (Tr. 330-31).

The MRI of Plaintiff's lumbar spine revealed "[s]pinal stenosis and broadbased disk bulging at L4-5, . . . [r]ight paracentral disk bulging into the neural foramina at L5-S1 with mild mass effect upon the exiting nerve root on the right . . . [and] mild scoliosis and . . . spondylitic changes" (Tr. 336). Interpreting those results, Dr. Wilke stated in March 2007 that the MRI showed "degenerative lumbar disease with probable foraminal stenosis at the L5 level, which may explain some of her lower lumbar symptoms." (Tr. 338). Dr. Wilke could not perform both a lumbar and cervical epidural injection at the same visit, however, so he administered a cervical epidural that day and instructed her to return for reevaluation in two months (Tr. 338-39). Plaintiff reported that she did

6

receive a single caudal injection (Tr. 433). Dr. Wilke also prescribed physical therapy (Tr. 338). Plaintiff reported that she stopped physical therapy due to unrelated medical complaints (Tr. 433).

On July 11, 2007, Plaintiff returned to see Dr. Kabbani (Tr. 453). Although Plaintiff had reported nine days earlier that she had stopped physical therapy, Dr. Kabbani stated, "[s]he is getting aqua therapy" (Tr. 453). According to Dr. Kabbani, Plaintiff's "[l]umbrosacral spine film showed degenerative disc disease and bulging discs with scoliosis" (Tr. 453). He prescribed a back brace (Tr. 453). In August 2007, Plaintiff reported that the back brace aggravated her pain at night, but she later told Dr. Kabbani the brace had been "helpful" (Tr. 436, 454). Also in August 2007, Plaintiff began seeing Travis Flock, M.D., a new primary care physician. She told Dr. Flock that Dr. Kabbani was treating her for arthritic symptoms, scoliosis, and carpal tunnel syndrome (Tr. 457). In October 2007, she complained of increasing joint pain, which, according to Plaintiff, Dr. Kabbani attributed to her neuropathy (Tr. 439). Then, in December 2007, she complained to Dr. Flock that she had been having headaches and nausea, which she believed were caused by a change in the medications prescribed by Dr. Kabbani (Tr. 462).

In January 2008, Cindy Payne-Smith, APN, who practices with Dr. Kabbani, noted that Plaintiff reported she "ha[d] been doing good," but she had a seven to eight day period of severe pain (Tr. 455). That same month, Plaintiff complained to her pain management physician that "it feels like there is electrical pain shooting through her when the sheets touch her legs or when her daughter accidentally bumps into her legs." (Tr. 445). Between July 2007 and March 2008, Plaintiff consistently reported a subjective pain level of eight or nine out of a possible ten (Tr. 433, 436, 439, 442, 445, 447, 450). In October 2007, her pain medication was changed from Lortab to Percocet (Tr. 439). She reported no side effects from the Percocet (Tr. 447).

7

Plaintiff returned to Dr. Kabbani's office in April 2008, and Dr. Kabbani penned a relatively detailed treatment note regarding that visit (Tr. 477). He noted that he had been treating Plaintiff for polyperipheral neuropathy, paresthesias, restless leg syndrome, and headaches which had been increasing in frequency (Tr. 477). Plaintiff told Dr. Kabbani that "overall," she was "doing well," but Celebrex had stopped working, so Dr. Kabbani prescribed Mobic instead (Tr. 477). In addition, Dr. Kabbani opined that Plaintiff's pain management physician should consider an occipital nerve block for her headaches, "which start in the base of her scalp and seem to run laterally to the frontal area." (Tr. 477). Finally, Dr. Kabbani ordered MRIs of Plaintiff's back and brain, both of which were performed on May 2, 2008 (Tr. 474, 477, 478).[3] The brain MRI, as relevant here, was normal[4] (Tr. 478), and the lumbar spine MRI showed "mild spondylitic changes most significant on the right L5-S1 with mass effect on exiting nerve roots" (Tr. 474). Reviewing the results of the lumbar spine MRI later that month, Dr. Kabbani noted only the finding of "spondylosis" and remarked there was "no change" in Plaintiff's physical exam (Tr. 483). He also noted that Plaintiff "decline[d]" a surgical referral (Tr. 483).

### C. Opinion Evidence

Three physicians offered written opinions regarding the degree of functional limitation imposed by Plaintiff's impairments. Robert Doster, M.D., a non-examining consultant, based his opinion on a review of Plaintiff's file in October 2006 (Tr. 314-21). He opined Plaintiff could lift

---

[3] Dr. Kabbani also indicated that further testing might be necessary "to rule out [a] possible MS-type problem" (Tr. 477).

[4] The brain MRI did reveal mastoiditis, but neither party argues that the diagnosis is material here (Tr. 478).

50 pounds occasionally and 25 pounds frequently, could sit for six hours or stand/walk for six hours during a normal workday, and had some manipulative limitations (Tr. 315, 317). Dr. Doster believed Plaintiff's complaints were only partially credible because her "symptoms are atypical and out of proportion to clinical findings" (Tr. 321). In January 2007, Michael Ryan, M.D., another non-examining consultant, offered a substantially similar opinion (Tr. 322-29). He noted there were "[n]o clinical findings of advanced arthritis in multiple joints" (Tr. 329).

The third written opinion, completed by Dr. Kabbani in October 2007, was significantly more restrictive (Tr. 399-401). Dr. Kabbani first identified Plaintiff's "confirmed" diagnoses as peripheral neuropathy, restless leg syndrome, lumbar radiculopathy, cervical spondylosis, and chronic cervogenic-type headaches (Tr. 399). The opinion is a "check form," which identifies Plaintiff's subjective complaints and asks Dr. Kabbani to verify whether each of her complaints is consistent with his findings and opinion. In particular, the form identifies the following complaints: that Plaintiff suffers from daily headaches during which she must cease activity; that she experiences low back pain and weakness which impairs her concentration and prevents her from standing more than 30-45 minutes at a time; that sitting more than 30-40 minutes at a time causes increased pain in her neck, shoulders, back, and leg; and that she cannot reliably and consistently grasp and manipulate objects due to numbness and tingling and a lack of grip strength (Tr. 399-400). Dr. Kabbani responded that each of these complaints was consistent with his findings and opinion (Tr. 399-400). Consequently, Dr. Kabbani opined that Plaintiff could not reasonably be expected to reliably attend and work full days in a 40-hour workweek (Tr. 401). Dr. Kabbani also submitted a letter in June 2008, in which he reiterated his opinion that Plaintiff could not work (Tr. 484). He opined that the "mild spondylitic changes . . . with mass effect on exiting nerve roots," as revealed

9

by the May 2008 MRI, would limit Plaintiff's ability to work without frequent breaks, such as lying down (Tr. 484). He limited Plaintiff to no more than 20 minutes continuous standing, 30 minutes walking, and one to two hours sitting, and he noted that all these activities could "worsen her painful syndrome" (Tr. 484).

The ALJ held a second hearing in Plaintiff's case to take medical expert ("ME") testimony from Dr. Alexander Todorov, a board-certified neurologist (Tr. 26). Prior to testifying, Dr. Todorov had received all the medical evidence in Plaintiff's file, including Dr. Kabbani's opinion (Tr. 27-28, 33-35). Dr. Todorov believed Dr. Kabbani's assessment was too restrictive (Tr. 35). He acknowledged that spondyloarthritis, as shown in Plaintiff's MRIs, can be the cause of disabling limitations, but opined that Plaintiff was not so limited (Tr. 35). Dr. Todorov was initially unwilling to infer that Dr. Kabbani's opinion was based entirely on Plaintiff's subjective complaints,[5] but he did agree that there were no clinical findings in Dr. Kabbani's records (for example, of muscle weakness, changes in reflex, or lower extremity EMG testing) to support the limitations he assigned (Tr. 35, 39-40). For example, Plaintiff's carpal tunnel syndrome did not cause any weakness or sensory loss (Tr. 44, 47), and she had a normal neurological exam (Tr. 45). Dr. Todorov also discussed the "mass effect" revealed in Plaintiff's lumbar MRI (Tr. 48-49). He testified that a "mass effect" is a spur or fracture "pushing one of the nerves to the side," and it can either cause pain or be asymptomatic (Tr. 48). Dr. Todorov could not find any clinical evidence in the record to support the presence Plaintiff's alleged symptoms of lumbar radiculopathy (Tr. 49). Finally, with respect to headaches, Dr. Todorov opined there was no medical evidence that lying down would relieve

---

[5] When asked whether Dr. Kabbani might have based his opinion on Plaintiff's subjective belief about what she could and could not do, Dr. Todorov declined to answer the question because he was "not privy to their conversation" (Tr. 35).

headache pain, because Plaintiff had muscle tension headaches, not migraine headaches (Tr. 52-53). He testified further that there was no medical test to validate the severity of a patient's headaches, and that it was simply a matter of credibility (Tr. 54).

Unlike Dr. Kabbani, Dr. Todorov opined Plaintiff could lift 10 to 20 pounds with a fifteen-minute break every two to three hours, could walk three to four hours per day, and could sit without limitation (Tr. 31). Dr. Todorov specifically declined to assign any limitations due to neuropathy in the lower extremities, which he characterized as "very mild" (Tr. 32). According to Dr. Todorov, Plaintiff could perform light work, limited by her need to alternate sitting and standing (Tr. 32-33).

### D. Vocational Expert Testimony and ALJ's Findings

The ALJ found that Plaintiff had two severe impairments: cervical spondylosis and degenerative disc disease (Tr. 17). He did not find carpal tunnel syndrome to be a severe impairment because there was no evidence of weakness or functional loss (Tr. 19). Similarly, he did not find radiculopathy of the lower extremities to be a severe impairment based on Dr. Todorov's testimony that there was no evidence of functional limitation (Tr. 19). At step three, the ALJ found that neither of Plaintiff's severe impairments, alone or in combination, met the criteria for any presumptively disabling impairments (Tr. 19). Between steps three and four, the ALJ assessed Plaintiff's RFC, concluding she could perform light work with a sit/stand option and 15-minute breaks every two to three hours (Tr. 19). In making this finding, he gave "great weight" to Dr. Todorov's testimony but declined to give any significant weight to Dr. Kabbani's opinion (Tr. 21-22). Given this RFC, a vocational expert ("VE") testified that Plaintiff could perform about half the jobs normally classified as "light work." Based on the VE's testimony, the ALJ found Plaintiff could not perform her past work, which required extended standing, but could perform other work

11

(Tr. 22). Accordingly, the ALJ concluded Plaintiff was not disabled.

## IV. ANALYSIS

Plaintiff raises only one issue in this appeal. She argues the ALJ improperly discounted Dr. Kabbani's opinion, leaving his RFC assessment unsupported by substantial evidence.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments

of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). Nonetheless, the court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

### B. Treating Physician Rule

As Plaintiff points out,

> treating sources[] . . . are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . .

20 C.F.R. § 404.1527(d)(2). Accordingly, a treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009).

If the ALJ does not give controlling weight to a treating source's opinion, he "must provide 'good reasons for discounting [it], reasons sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting* SSR 96-7p). Those reasons must themselves be supported by substantial evidence. *Blakley*, 581 F.3d at 406-07. In declining to give any significant weight to Dr. Kabbani's opinion, the ALJ found that Dr. Kabbani's opinion "is too restrictive and not supported by Dr. Kabbani's own findings on objective and clinical examinations or by the record as a whole" (Tr. 21). The ALJ explained,

> Dr. Todorov opined that Dr. Kabbani's opinion as to her limitations could only be based on the claimant's complaints. He further stated Dr. Kabbani's opined limitations appear to relate primarily to her lumbar spine; however, Dr. Todorov stated he was unable to find any evidence in Dr. Kabbani's notes with regard to objective or clinical examinations that would prove or demonstrate radiculopathy [and] Dr. Kabbani failed to order an EMG of the lower extremities. In fact, Dr. Todorov noted Dr. Kabbani treated the claimant mostly for headaches and upper extremity problems, until 2008, when Dr. Kabbani recommended a back brace for low back pain.

(Tr. 21-22).

Plaintiff challenges the ALJ's rationale on two bases. First, she argues that Dr. Todorov's testimony was not inconsistent with that of Dr. Kabbani. According to Plaintiff, Dr. Kabbani admitted that Plaintiff's impairments can result in "awfully variable" functional limitations. While that statement is true, Plaintiff's argument fails to address Dr. Todorov's explicit testimony that he disagreed with Dr. Kabbani's assessment (Tr. 35). As the Commissioner points out, when the ALJ asked Dr. Todorov whether there was "a clinical basis . . . that would support [Dr. Kabbani's] restrictions," Dr. Todorov responded that he "d[id] not [see] any report from Dr. [Kabbani] to sustain that position." (Tr. 39-40). Furthermore, the ALJ did not find that Plaintiff's objectively verified

14

impairments could not cause her subjective complaints. Indeed, he specifically found that they could (Tr. 20). Instead, the ALJ simply gave greater weight to Dr. Todorov's opinion that, in this case, they did not cause Plaintiff to suffer disabling pain. The question, then, is whether the ALJ's reasons for preferring Dr. Todorov's opinion were "good reasons" under the applicable regulations.

Plaintiff argues that the ALJ's reasons were incorrect. She argues that Dr. Kabbani's opinions were, in fact, supported by clinical findings and objective evidence.[6] Specifically, Plaintiff argues that Dr. Kabbani's opinion was supported by the MRI results. Citing Dr. Todorov's testimony, Plaintiff contends that some individuals with Plaintiff's objectively verifiable impairments "will be very much limited" in their work-related abilities. According to Plaintiff, therefore, the ALJ should have deferred to Dr. Kabbani's "unique perspective" in interpreting the ambiguous MRI results.

Plaintiff relies on *Sherrill v. Sec'y of Health & Human Servs.*, 757 F.2d 803, 805 (6th Cir. 1985). In *Sherrill*, a non-examining medical expert testified that the objective evidence in the record was ambiguous—i.e., that two equally qualified physicians might draw opposite conclusions from that evidence. *Id.* Nonetheless, the medical expert made a "judgment call" that the claimant's impairments did not rise to listing-level severity. *Id.* The court found that the medical expert's testimony was "ambivalent." *Id.* Furthermore, the court noted that the medical expert was a specialist in pulmonary disease, but he was testifying about the claimant's psychiatric impairments.

---

[6] Plaintiff appears to argue that Dr. Kabbani's opinions themselves constitute "clinical findings," which are defined to include "results of physical or mental status examinations." 20 C.F.R. § 404.1513(b)(2). This argument merits little consideration. A doctor's opinion is not self-supporting, and such an opinion is given more or less weight "depend[ing] on the degree to which [it] provide[s] supporting explanations . . . ." 20 C.F.R. 404.1527(d)(3). Dr. Kabbani's check form does not describe any of his underlying findings, and the 2008 letter cites only the MRI results as support for the opinion.

15

*Id.* The court therefore held that "the ambivalent testimony of a non-treating physician" who practiced in a different field was not sufficient to overcome the testimony of the other physicians who examined the claimant over a period of time.

Unlike the medical expert in *Sherrill*, the medical expert here was not ambivalent. Admittedly, Dr. Todorov testified that MRI results like Plaintiff's could, in some individuals, cause significant limitations. He testified unambiguously, however, that Dr. Kabbani's opinion was not supported by the necessary clinical tests to verify the existence of such limitations. The ALJ found this to be a good reason for discounting Dr. Kabbani's opinion, and I agree. *See Massey v. Comm'r of Soc. Sec.*, 2011 WL 383254, *3-4 (6th Cir. 2011) (unpublished) (concluding, on very similar facts, that the ALJ was entitled to adopt a medical expert's testimony over a treating physician's opinion due to a lack of objective evidence). Indeed, the crux of Plaintiff's argument is that her objectively verified impairments could cause disabling limitations in some people. It follows, however, that Plaintiff's ambiguous MRI results, taken alone, are not sufficient to show that Plaintiff suffered from any such limitations. Without additional objective evidence, Plaintiff has only her own testimony as evidence of disability, and she does not challenge the ALJ's finding that her subjective complaints were not entirely credible. Therefore, because the ALJ gave good reasons for giving greater weight to Dr. Todorov's opinion than to Dr. Kabbani's, I **FIND** the ALJ's RFC finding was supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND:**[7]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 11] be **DENIED**.

(2) Defendant's motion for summary judgment [Doc. 15] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

17